UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| EDWARD LEE, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:24-CV-00195-JRG-CHS |
| CHAD PARTON, TAMMY WARREN, and TENNESSEE DEPARTMENT OF CORRECTION, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner housed in the Coffee County Jail, filed this pro se civil rights action under 42 U.S.C. § 1983 [Doc. 2], motion for leave to proceed *in forma pauperis* [Doc. 1], and motion to appoint counsel [Doc. 3]. For the reasons set forth below, the Court will grant Plaintiff's motion to proceed *in forma pauperis*, deny Plaintiff's motion to appoint counsel, dismiss the complaint, and permit Plaintiff an opportunity to file an amended complaint.

**I.       MOTION TO PROCEED *IN FORMA PAUPERIS***

It appears from Plaintiff's motion to proceed *in forma pauperis* [Doc. 1] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred

fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum and Order to the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II.  MOTION TO APPOINT COUNSEL

Plaintiff has filed a letter, which the Court construes as a motion, seeking the appointment of counsel [Doc. 3]. Plaintiff cites his indigency as a basis for his request [*Id.*].

Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[a]ppointment of counsel in a civil case is not a constitutional right[,]" but a "privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993) (internal citations omitted). In determining whether "exceptional circumstances" exist, the Court considers "the complexity of the case and the ability of the plaintiff to represent himself." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citing *Lavado*, 992 F.2d at 606).

Plaintiff's case does not appear either legally nor factually complex, and it appears to the Court that, at this time, Plaintiff may adequately represent himself. Thus, Plaintiff has not established any exceptional circumstances that justify appointment of counsel in this action, and his motion [Doc. 3] will be **DENIED**.

## II.  SCREENING OF COMPLAINT

### A.  Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).  The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure.  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim.  *Twombly*, 550 U.S. at 555, 570.  Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief.  *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law.  42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any

3

constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

B.      **Plaintiff's Allegations**

At the Coffee County Jail, Plaintiff, who is "of the Hebrew faith[,]" is not allowed any religious material other than a small-print Bible that the jail provides [Doc. 2 at 3–4]. And Plaintiff cannot read the small print, because his glasses were broken at the time of his arrest [*Id*. at 4]. Additionally, the jail does not serve religious trays–they serve only a vegetable tray or a regular tray [*Id*.]. The vegetable tray consists of a couple of "little packs of P.B. & 2 or 3 wraps" along with rice and beans at each meal [*Id*.].

On April 29, 2024, Tammy Warren stated that the Coffee County Jail would no longer accept packages for security reasons, and there is "no church" for inmates, though "a church comes in" for those who work in the jail [*Id*. at 4, 5]. Plaintiff "recon[s] [his] time as a Hebrew[] by the moon[,]" and "7 times every 19 years a month is added on to [sic] [his] Hebrew calendar" [*Id*. at 5]. But because all the windows in the Coffee County Jail are covered with metal, Plaintiff "can't see the sun or moon to recon [his] time or [his] festivles [sic]" [*Id*.]. Plaintiff tries to face toward Jerusalem to pray, but because of the covered windows, he has no way of knowing for sure whether he is doing so [*Id*.].

Plaintiff is a Tennessee Department of Correction ("TDOC") inmate, and TDOC provides inmates with glasses, religious trays, medical and mental health services, religious material, and church services [*Id*. at 4]. In this lawsuit against Chad Parton, Tammy Warren, and the TDOC, Plaintiff asks the Court to move him to TDOC custody, provide him with a large-print Bible, and ensure his "freedom to religious books" and religious trays, along with any other compensation the Court deems appropriate [*Id*. at 7].

### C. Analysis

#### 1. TDOC

Plaintiff has named the TDOC as a Defendant in this action because it is housing Plaintiff in the Coffee County Jail, and he asks the Court to order him moved to a different facility [Doc. 2 at 4, 7]. But Plaintiff has no protected interest in where he is housed. *See, e.g., Montanye v. Haymes*, 427 U.S. 236, 242–43 (1976) (finding prisoner has "no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred"); *see also McCord v. Maggio*, 910 F.2d 1248, 1250 (1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances).

Moreover, suit against the TDOC is suit against the State of Tennessee. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). But "a state is not a person within the meaning of §1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

Also, the Eleventh Amendment typically "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments." *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984)). Because there has not been congressional abrogation or waiver of immunity, Plaintiff's claims against the TDOC are barred by the Eleventh Amendment. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 345 (1979) (finding § 1983 does not waive state sovereign immunity); *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (holding Tennessee has not waived immunity to suit under § 1983). Thus, the Court will **DISMISS** Defendant TDOC.

### 2. Medical Care

Plaintiff complains that medical staff at the Coffee County Jail will not treat him for athlete's foot, even though there is a "a simple cure" [Doc. 2 at 5]. Plaintiff's allegations implicate the Eighth Amendment to the Constitution, which prohibits, as relevant here, deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). To state a claim for deliberate indifference to his medical needs, Plaintiff must show that one or more Defendants "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Court notes that Plaintiff has not identified any staff member who has allegedly denied him medical care. But regardless, Plaintiff fails to state a plausible claim of deliberate indifference under the facts alleged, as garden-variety athlete's foot is not an objectively serious medical condition that implicates the Eighth Amendment. *See Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (holding that "eczema of the feet . . . [and] athlete's foot" are not objectively serious under the Eighth Amendment); *Thompson v. Carlsen*, No. 9:08-CV-0965, 2010 WL 3584409, at *1 (N.D.N.Y. Aug. 16, 2010) ("[D]ry and cracked skin, and athlete's foot . . . are not serious medical problems under Eighth Amendment standards."); *Patterson v. Kim*, No. 1:08-CV-873, 2009 WL 2982753, at *8 (W.D. Mich. Sep. 14, 2009) ("Plaintiff's alleged ingrown toenail and foot fungus are not 'serious medical needs' sufficient to support the objective component of an Eighth Amendment claim."). Therefore, Plaintiff's claim for the denial of constitutionally adequate medical care will be **DISMISSED**.[1]

---

[1] Plaintiff does not claim that he has been denied eyeglasses, though he does note that he does not have any and that TDOC facilities provide them [Doc. 2 at 4]. But even if Plaintiff intended to a claim related to the lack of

6

Case 1:24-cv-00195-JRG-CHS   Document 6   Filed 06/18/24   Page 6 of 11   PageID #: 26

### 3. Religion

The gravamen of Plaintiff's complaint concerns how conditions and/or policies at the Coffee County Jail impact his practice of the Hebrew faith [*See generally* Doc. 2]. Plaintiff's allegations implicate the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a).

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law. . . prohibiting the free exercise' of religion.'" *Fulton v. City of Philadelphia, Penn.*, 593 U.S. 522, 532 (2021). But "while freedom to believe is absolute, the exercise of religion is not[.]" *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983) (citing *Connecticut v. Cantwell*, 310 U.S. 296 (1940)). And "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). Accordingly, a prisoner's rights may be reasonably restricted to accommodate "legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

To establish a free exercise violation, Plaintiff must establish that (1) the belief or practice asserted is religious within his own "scheme of things," (2) his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987) (internal citations and citation omitted). To be actionable, Defendant's infringement must place "a substantial burden on the observation of a central religious belief or practice[.]" *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). And "the Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). A burden is substantial where it (1) forces an

---

vision care at the Coffee County Jail, he has failed to allege any facts suggesting he has ever requested such care and been denied. Thus, Plaintiff has not stated a claim related to the fact that he does not have glasses.

individual to choose between following the tenets of his religion and foregoing governmental benefits or (2) places "substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Id*. at 734.

RLUIPA "applies to prisons that receive federal funds and prohibits state and local governments from placing 'a substantial burden' on the 'religious exercise' of any inmate unless they establish that the burden furthers a 'compelling governmental interest' and does so in the 'least restrictive' way." *Haight v. Thompson*, 763 F.3d 554, 559 (6th Cir. 2014) (quoting 42 U.S.C. § 2000cc-1(a)).

Plaintiff's allegations fail to state either a First Amendment claim or a RLUIPA claim. First, while Plaintiff complains that Defendants do not provide religious materials other than a small-print Bible, they have no affirmative duty to provide Plaintiff with religious materials. *See Frank v. Terrell*, 858 F.2d 1090 (5th Cir. 1988) (quoting *Cruz v. Beto*, 405 U.S. 319, 323 (1972) ("There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country.")).

Second, Plaintiff provides no facts about what his religious diet requires, and thus, the Court cannot find that forcing him to choose between a vegetable tray or a regular tray would require him to either violate his religious beliefs or starve.

Third, it is not clear what claim Plaintiff is pursuing as to his assertions regarding how he recognizes time [Doc. 2 at 4–5]. It appears that Plaintiff is claiming that because he cannot see outside, he cannot properly count days to observe Holy days or know which direction to face to pray [*Id.*]. But Plaintiff does not allege that Defendants have prohibited him from observing Holy days or praying toward Jerusalem, nor does he allege that he has asked Defendants (or others) for assistance in determining the appropriate days and/or directions and been denied. Thus, he has not alleged that Defendants have placed a substantial burden on his ability to exercise his faith.

Finally, Plaintiff's claim that there is "no church" and no non-Bible religious material is not supported by facts that would allow the Court to determine that Defendants have prevented Plaintiff from exercising his faith. For instance, Plaintiff does not allege that he is restricted from practicing his faith privately, "correspond[ing] with fellow believers," or "consult[ing] individually with a personal minister if he so desired." *Spies v. Voinovich*, 173 F.3d 398, 404–05 (6th Cir. 1999). And while Plaintiff complains that he only has access to a Bible for religious information, he does not allege that he needs any particular publication or literature to practice his faith. Therefore, under the facts presented, Plaintiff has failed to state a plausible free-exercise claim, and this claim will be **DISMISSED**.

Nonetheless, the Court will allow Plaintiff an opportunity to submit additional factual allegations to support a finding that Defendants' actions substantially burdened the observation of some practice or belief of his faith. Therefore, if Plaintiff wishes to further pursue this action, he **MUST** file an amended complaint with a short and plain statement of facts setting forth exactly how his religious beliefs or practices were substantially burdened within fourteen (14) days of entry of this Order. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("Under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). The Clerk will be **DIRECTED** to mail Plaintiff a § 1983 form for this purpose.

Plaintiff is **NOTIFIED** that the Court will only address the merits of Plaintiff's claims that relate to his original complaint. Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims that do not relate to his original complaint, and he is advised that any such claims will be **DISMISSED**. Further, Plaintiff is **NOTIFIED** that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it

9

**must** be complete in and of itself and must not refer to any previously filed allegations or pleadings.

Plaintiff is **NOTIFIED** that if he does not file an amended complaint by the deadline, the Court will dismiss this action for failure to state a claim upon which relief may be granted and for failure to prosecute and comply with an order of the Court.

Finally, Plaintiff is **NOTIFIED** that the Court **WILL NOT** consider any other kind of motion for relief until after the Court has screened the amended complaint pursuant to the PLRA, which the Court will do as soon as practicable. Accordingly, the Court will automatically deny any motions filed before the Court has completed this screening.

## IV. CONCLUSION

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Plaintiff's motion to appoint counsel [Doc. 3] is **DENIED**;

5. Plaintiff's complaint is **DISMISSED** because it fails to state a claim upon which relief may be granted under § 1983;

6. Plaintiff shall have fourteen (14) days from entry of this Order to submit an amended complaint in accordance with the directives above. The Clerk is **DIRECTED** to send Plaintiff a § 1983 form for this purpose;

7. If Plaintiff fails to timely submit an amended complaint, this action will be dismissed for failure to state a claim upon which § 1983 relief may be granted and for failure to prosecute and comply with an order of the Court; and

8. Plaintiff must immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to

provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

11